# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JAMES GLENN HAYES,      )
                             )
        Movant,        )
                             )
      v.                 )        No. 4:09-CV-116 CAS
                             )
UNITED STATES OF AMERICA,   )
                             )
        Respondent.    )

## MEMORANDUM AND ORDER

This matter is before the Court on federal prisoner James Glenn Hayes's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence ("Motion to Vacate"). The government has filed its response, and movant filed a traverse. This matter is fully briefed and ready for decision. For the following reasons, movant's motion will be denied.

### *I. Background*

On or about August 29, 2005, movant was charged by way of complaint with seven counts, each of which related to a controlled substance or firearms related offense. Following the entry of the complaint, Douglas A. Forsyth, Esq., entered his appearance on movant's behalf. On September 15, 2005, a grand jury issued an indictment against movant and seven co-defendants. Movant was arraigned before United States Magistrate Judge Audrey G. Fleissig[1] on October 3, 2005. That same day, the government provided discovery to Mr. Forsyth and filed a Disclosure of Arguably Suppressible Evidence, in which it outlined the evidence it intended to use in the event of trial. On October 10, 2005, Mr. Forsyth filed a Request for Discovery. Mr. Forsyth never filed a motion for

---

[1]On June 9, 2010, the Honorable Audrey G. Fleissig was sworn in as United States District Court Judge for the Eastern District of Missouri.

discovery or a motion to compel. The government did provide additional discovery to Mr. Forsyth on October 12, 2005.

On October 15, 2005, movant filed a waiver of pretrial motions. On November 14, 2005, movant appeared before then Magistrate Judge Audrey Fleissig. At the hearing, Judge Fleissig engaged movant in a length colloquy regarding his decision to waive pretrial motions. Hearing Transcript at 5-8. Following the colloquy, Judge Fleissig asked movant whether he wished to waive his right to filed pretrial motions, and movant answered in the affirmative. Id. at 8. At the hearing, Judge Fleissig also asked movant's attorney whether the government had "produced all discovery it is required to produce to these defendants in this matter?" Id. at 3. Mr. Forsyth responded it had, and that he had had the opportunity to review the discovery. Id.

In December 2005, the parties reached a plea agreement under which movant agreed to plead guilty as to Counts I and V of the indictment, and the government agreed to dismiss Counts II, IV, VI, VII, and VIII. Movant signed a written Plea Agreement, Guidelines Recommendations and Stipulations ("Plea Agreement"). Although the parties were able to reach an agreement as to the charges, they were unable to reach an agreement as to the proper application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). Plea Agreement at 2. They did agree that the 2004 version of the Guidelines Manual applied, and that movant should receive a three-level deduction for acceptance of responsibility pursuant to Section 3E1.1. The parties did not agree as to the base-level offense, specific offense characteristics, estimated total offense level, or movant's criminal history. It is stated in the Plea Agreement that "[t]he parties agree and understand that the Court, in its discretion, may apply any Guidelines not addressed in this document. Furthermore, this

Court is not bound by these recommendations. The refusal of this Court to follow the recommendations of the parties shall not serve as a basis to withdraw the plea." Id. at 7-8.

As for the penalties, it states in the Plea Agreement as to Count I that "defendant fully understands that the maximum possible penalty provided by law for the crime to which defendant is pleading guilty is imprisonment of not more than life . . . and requires a mandatory minimum term of imprisonment of at least 10 years." Id. at 12. As for Count V, the Plea Agreement states that "defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years." Id.

With regard to representation, movant agreed that he was "fully satisfied with the representation received from defense counsel," and that he had "reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel." Id. at 14-15. The Plea Agreement further states that "defense counsel completely and satisfactorily explored all areas [movant] had requested relative to the government's case and any defenses." Id. at 15. With respect to coercion, the Plea Agreement states that "[[t]his document constitutes the entire agreement between [movant] and the government and no person has, directly or indirectly, threatened or coerced [movant] to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty." Id. at 15.

In the Plea Agreement, movant also agreed to waive his right to file an appeal with respect to non-jurisdictional issues. Id. at 3. Movant further waived his right to contest the conviction or sentence in any post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel. Id.

On December 21, 2005, movant appeared before the undersigned for a change of plea. Movant took an oath to tell the truth and was asked several questions, the purpose of which was to establish the voluntariness of his plea. Specifically, movant was asked his age, the extent of his education, whether he was under the influence of alcohol or any drug, and whether he suffered from any mental disease or defect. Hearing Transcript at 2-3. Movant gave appropriate responses to all the questions asked at the time. Movant was advised of the charges and the range of punishment, including that there was a maximum possible punishment of life imprisonment for Count I and a maximum possible punishment of 20 years imprisonment for Count V. Id. at 3-4. Movant was also informed that Count I carried a "minimum mandatory period of incarceration of not less than 10 years." Id. at 4. Movant stated under oath that he understood the charges and the range of punishment. Id. Movant was also asked whether there had been any threats or promises made in exchange for his guilty plea. Id. at 8. Counsel for the government, Mr. Forsyth, and movant all answered in the negative. Id. at 8.

Movant pleaded guilty as to Counts I and V of the indictment. Movant pleaded guilty to one count of possession of pseudoephedrine, knowing that it would be used to manufacture a controlled substance (Count I), and one count of conspiracy to manufacture methamphetamine (Count V). See 21 U.S.C. §§ 841(a)(1), (c)(1), (c)(2) and 846, and 18 U.S.C. § 922(j). During the hearing, the government recited the facts in support of the plea, and movant admitted the facts were accurate. Id. at 8. Mr. Forsyth explained to the Court that movant was in agreement that the amount of methamphetamine was in excess of 500 grams, and the government responded that it remained to be seen the precise amount of drugs attributable to movant. Id. at 7. The government and movant, however, all agreed the amount was in excess of 500 grams. Id. at 7, 15.

The matter was set for sentencing and a Presentence Investigation Report ("PSR") was ordered. The PSR, which was prepared on January 20, 2006, recommended that movant's base offense level was 32. The PSR recommended that six levels be added pursuant to U.S.S.G. Section 2D1.1(b)(6)(C) because the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the life of a minor. The PSR also recommended that two levels be added pursuant to Section 2D1.1(b)(1) because movant had possessed a firearm in connection with the offense, and a four-level increase pursuant to Section 3B1.1(a) because he occupied a leadership role in the criminal activity. It was also recommended that two levels be added because he recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The PSR also recommended that movant should receive a three-level reduction for acceptance of responsibility under Section 3E1.1(a) and (b), for a total offense level of 43. In the PSR, movant's criminal history was calculated to be a category III, based upon a total of six criminal history points. The Guidelines sentencing range was calculated to be to life imprisonment. PSR at 12.

Mr. Forsyth timely objected to the PSR. He objected to the total drug quantity, the assessment of a six-level enhancement based on the finding that movant had created a substantial risk of harm to the life of a minor, the assessment of a two-level enhancement based on the possession of a firearm, and the four-level enhancement based on the leadership role. Mr. Forsyth argued movant's total offense level should be 29.

The government responded to defendant's objections to the PSR. The government attached to their response a report authored by Dr. John William Martyny, Associate Professor in the Division of Environmental and Occupational Heath Sciences at the National Jewish Research and Medical

Center in Denver, Colorado. In his report, Dr. Martyny expressed his opinion, to a reasonable degree of scientific certainty, that movant's conduct in the offense of conviction was likely to result in significant harm to the lives of his children, including his deceased infant child, Jersie Hayes.[2] Also attached to the government's response was (1) a laboratory report prepared by the Drug Enforcement Administration's North Central Laboratory in Chicago, Illinois, which revealed traces of methamphetamine on a pillow case, a can of baby formula, and a pacifier seized from movant's residence on the day Jersie Hayes died; and (2) a Medical Examiner's Report, which stated that the manner of Jersie Hayes's death was undetermined. On February 23, 2006, the government filed a witness list, which included Dr. Martyny and three other witnesses, including two of movant's co-defendants.

On March 7, 2006, movant appeared with his attorney, Mr. Forsyth, for a sentencing hearing. At the sentencing hearing, Detective Daman Kunnemann of the St. Louis County Police Department, Narcotics Unit; Detective Gerald Williams of the Jefferson County Sheriff's Department, Narcotics Unit; co-defendant Joshua Spitz; co-defendant Jason Jackson; and Dr. Martyny testified on the government's behalf. Defense counsel cross-examined these witnesses, but no witness testified on movant's behalf. The Court took the matter under advisement. The government filed its proposed findings of fact and conclusions of law relative to the sentencing hearing. The movant filed a response, and the government replied.

On May 26, 2006, the undersigned issued a 34-page Sentencing Memorandum. In its order, the Court found movant had a base offense level of 34, with a two-level enhancement for possession

---

[2]Movant's four-week old daughter was found deceased in movant's residence on January 21, 2003.

of a firearm in connection with the offense pursuant to § 2D1.1(b)(1), a six-level enhancement for creating a substantial risk of harm to the life of a minor pursuant to § 2D1.1(b)(6)(C), a four-level enhancement for being an organizer or leader pursuant to § 3B1.1(a), a two-level enhancement for reckless endangerment during flight pursuant to § 3C1.2, a three-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) and (b), for total offense level of 45 – two levels higher than the highest offense level provided for under the Guidelines, which is 43.

On May 30, 2006, movant appeared before the Court for sentencing. The government argued for the imposition of a life sentence. Movant's counsel argued that the Court should impose a sentence of 240 months. After hearing arguments from both sides, the Court gave movant the opportunity to speak. The undersigned sentenced movant to 324 months in prison followed by 5 years of supervised release for Count I, and a concurrent 240-month prison sentence and 3 years of supervised release for Count V.

Movant filed a timely appeal, which was submitted to the Eighth Circuit Court of Appeals. On appeal, movant's counsel moved to withdraw and filed a brief under Anders v. California, 386 U.S. 738 (1967). On January 29, 2008, the Eighth Circuit Court of Appeals affirmed the judgment of the district court based on the record of the district court and the parties' briefs. United States v. Hayes, 266 Fed. Appx. 502 (Jan. 29, 2008). It found the sentence imposed was not unreasonable and that the district court had considered the appropriate factors under 18 U.S.C. § 3553(a). The Eighth Circuit declined to review movant's claims that his counsel was ineffective at the sentencing hearing, noting that the claim is more properly raised in a motion under 28 U.S.C. § 2255. Finally, the Eighth Circuit held the district court's sentence was not contrary to United States v. Booker, 543 U.S. 220

(2005), because the district court had treated the Guidelines as advisory. Movant filed a petition for certiorari with the United States Supreme Court, which was denied on June 2, 2008.

In the § 2255 motion presently before the Court, movant asserts ten grounds for relief:

<u>Ground One:</u> movant's guilty plea was made unknowing and unintelligently due to counsel's ineffectiveness;

<u>Ground Two:</u> counsel was ineffective when he did not object to the Court's failure to give notice to movant of the effect of the Guidelines;

<u>Ground Three:</u> counsel rendered ineffective assistance for failing to object to the Court's treatment of the Guidelines as being "presumptively reasonable";

<u>Ground Four:</u> counsel rendered ineffective assistance by failing to subpoena or otherwise call Kristy Toczylowski to testify at the sentencing hearing;

<u>Ground Five:</u> counsel rendered ineffective assistance by failing to move for withdrawal of his guilty plea;

<u>Ground Six:</u> appellate counsel was ineffective for failing to appeal the Court's failure to give notice to movant of the effect of the Guidelines;

<u>Ground Seven:</u> appellate counsel was ineffective for failing to appeal the Court's treatment of the Guidelines as being "presumptively reasonable";

<u>Ground Eight:</u> the prosecution failed to disclose exculpatory evidence from Ms. Toczylowski, which amounted to prosecutorial misconduct warranting withdrawal of the plea;

<u>Ground Nine:</u> movant's sentence violated <u>Rita v. United States</u>, 551 U.S. 338 (2007) because the Court treated the Guidelines as presumptively reasonable;

<u>Ground Ten:</u> petitioner's rights to due process were violated at sentencing because the Rule 11 colloquy was improper.

## *II. Legal Standard*

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction

to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

"A § 2255 motion 'can be dismissed without a hearing if (1) the [movant]'s allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

### III. Discussion

#### A.     Ineffective Assistance of Trial Counsel

Movant claims ineffective assistance of trial counsel as the basis for Grounds One through Five of his petition. To prevail on an ineffective assistance of counsel claim, movant must show that his counsel's performance was deficient and that he was prejudiced by the deficient performance. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Counsel's performance was deficient if it fell outside the wide range of professionally competent assistance." McReynolds, 208 F.3d at 723 (internal quotations and citations omitted). Prejudice is shown if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S.

at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.

### 1. Claim that plea was not knowing and intelligently made due to counsel's ineffectiveness

In Ground One movant argues his counsel was ineffective in that he misled movant into thinking that if movant pleaded guilty he would only receive a 120-month sentence.  He argues his counsel's conduct "led him to a subjective state of involuntariness and unknowingness when he entered his plea."  See Memorandum in Support at 22.

The Strickland standard applies to guilty plea challenges premised upon allegations of ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 58 (1985).  To satisfy the second prong's "prejudice" requirement, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.  A court may address the two prongs in any order, and if the movant fails to make a sufficient showing of one prong, the court need not address the other prong.  Strickland, 466 U.S. at 697; Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

Under Eighth Circuit law, "[i]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."  United States. v. Quiroga, 554 F.3d 1150, 1155 (8th Cir. 2009).  See also United States v. Spears, 235 F.3d 1150, 1152 (8th Cir. 2001) (holding that a defendant's guilty plea was "knowing and voluntary," despite "any confusion about how he would fare under the Sentencing Guidelines"); United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999) ("a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient

to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); United States v. Bond, 135 F.3d 1247, 1248 (8th Cir. 1998) ("[a] defense counsel's erroneous estimate of a guidelines sentence does not render an otherwise voluntary plea involuntary."); Matthews v. United States, 114 F. 3d 112, 114 (8th Cir. 1997) ("[W]e find it unnecessary to determine if [defendant]'s counsel performed in a deficient manner because we are satisfied that [defendant] suffered no actual prejudice from counsel's alleged errors. [Defendant] alleged that he pleaded guilty on his trial counsel's assurance that the potential sentencing range would be five to eight years of imprisonment. Regardless of what his trial counsel advised him concerning the length of potential sentences that might result from his guilty pleas, the record demonstrates that the trial judge clearly explained the potential maximum sentence to [defendant] at the plea proceeding."); Roberson v. United States, 901 F.2d 1475, 1478 (8th Cir. 1990) (holding that a defendant's reliance on defense counsel's erroneous prediction that he would receive a more lenient sentence if he pled guilty did not make his plea involuntary, where the defendant was fully informed of the maximum sentence on each count). The Eighth Circuit has held that this precedent is equally, if not more applicable to cases where the Guidelines are "merely advisory." Quiroga, 554 F.3d at 1156.

Prior to the entry of the plea, movant was advised in open court on December 21, 2005, that as to Count I, the maximum possible punishment for the offense to which he was pleading guilty was "imprisonment of a term of not more than life, a fine of not more than $4 million, or both, and supervised release of not less than five years, and a special assessment in the amount of $100." Hearing Transcript at 3. Movant was further advised that, as to Count V, that the maximum possible penalty for that offense was "a period of incarceration of not more than 20 years, a fine of not more

than $250,000, or both, and a period of supervised release of not more than three years, and a $100 special assessment." Hearing Transcript at 4. Movant was also notified that Count I carried a "minimum mandatory period of incarceration of not less than ten years." Id. Movant acknowledged that he understood these minimum and maximum penalties for the offenses to which he was pleading guilty. Id.

In the Plea Agreement movant was also informed of the range of punishment he was facing. As to Count I it states, "defendant fully understands that the maximum possible penalty provided by law for the crime to which defendant is pleading guilty is imprisonment of not more than life . . . and requires a mandatory minimum term of imprisonment of at least 10 years." Id. at 12. As for Count V, the Plea Agreement states "defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years." Id. In addition, movant acknowledged that the parties had not agreed upon the application of the Guidelines to his case, and the Court would determine the length of sentence. Under Eighth Circuit law, the Court finds movant's plea was knowing and voluntary, despite any representations his counsel may have made regarding the length of the sentence that would be imposed. Quiroga, 554 F.3d at 1155; Spears, 235 F.3d at 1152; Granados, 168 F.3d at 345; Bond, 135 F.3d at 1248; Matthews, 114 F. 3d at 114; Roberson, 901 F.2d at 1478.

In his memoranda in support, movant makes much of the fact that during the sentencing hearing on May 30, 2006, movant addressed the Court and said, "If I would have known I was pleading guilty to this, I would have never pleased guilty, I would have went to trial." Hearing Transcript at 15. This comment does not establish movant's plea was involuntary, but rather that he had post-plea regrets and perhaps he did not fully appreciate the gravity of the penalty he was facing

until the sentence was imposed.  <u>United States v. Stuttley</u>, 103 F.3d 684, 686 (8th Cir. 1996) ("[p]ost-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea, or for this court to reverse the district court.").  In support of his claim, movant also refers to the Court's off-hand closing remark that was made at the change of plea hearing on December 21, 2005.  After movant was informed of the maximum sentence he was facing and he had entered his plea, the Court said in closing, "Mr. Hayes, you're about one step ahead of the dead man walking that just left here. They saved you. . . You're going to have ten years to get yourself some education and get yourself together and get high on life or something."  Hearing Transcript at 10.  The Court's remark was not a promise of the sentence movant would receive.  Movant had already pleaded guilty and he was aware that he was facing a maximum sentence of life.  The Court's off-the-cuff remark was made in reference to the fact that movant's arrest had stopped his criminal activity, and that he would have some time in prison to sort out his life.  The comment is in no way evidence that a promise had been made or an agreement had been reached that movant would receive a 10-year sentence.

Movant also argues that "[e]vidence in the record supports an inference that counsel told Petitioner that there was an agreement for a 120-month sentence."  Memorandum in Support at 23. The Court does not find this to be the case.  At the change of plea hearing, movant was informed of the maximum sentence he was facing and when asked if there had been any agreements made in exchange for his plea, movant responded in the negative, as did his counsel and the government's attorney.  It is also clear that at the hearing the parties did not agree as to the amount of the drugs for which movant was responsible, and that the Court would be asked to make this and other factual determinations before imposing a sentence.  There is nothing in the record to support movant's

argument that his counsel had a valid agreement with the government or this Court as to the length of movant's sentence, and in fact, the evidence establishes otherwise. The Court finds movant's claim is borne out of disappointment that the Court ruled in the government's favor on the issue of the application of the Guidelines and imposed a sentence that was longer than he had hoped.

Movant also argues in Ground One that his trial counsel was ineffective in that he convinced movant to waive discovery, which resulted in movant entering a plea in the blind. The Court has reviewed the record and finds this claim to be without merit. Movant's counsel did not waive discovery. The government provided discovery to movant's counsel in a letter dated October 3, 2005, a copy of which is attached to the government's response as Exhibit 3. The government sent movant's counsel a second discovery letter on October 12, 2005, a copy of which is attached to the government's response as Exhibit 4. The government also filed a "Disclosure of Arguably Suppressible evidence pursuant to Rule 12(b)(4)."

Movant responds that "[e]ven assuming that the government provided discovery on October 3, 2005, as it alleges, there is no proof that this discovery was shown to [movant] before the Rule 11 hearing." See Traverse at 9. In his traverse movant has shifted his claim. Movant now appears to be arguing that his counsel was ineffective for failing to show him the discovery. This claim is also without merit. Even if the Court were to entertain this new claim, movant has not specified what discovery he did not see, and how seeing that discovery would have changed his decision to enter a plea, such that he would have insisted on going to trial. Hill, 474 U.S. at 59.

In sum, movant has not established that his counsel's performance was deficient. Strickland, 466 U.S. at 687; McReynolds, 208 F.3d at 723. He cannot show that his plea was not knowing and intelligently made. Even if his counsel provided him with misinformation regarding the length of

sentence he would receive, movant was correctly informed at the change of plea hearing of the maximum and minimum sentence he was facing, and knowing he was facing a life sentence, he entered a guilty plea. Movant simply cannot show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

> **2.** **Claim that counsel was ineffective when he did not object to the Court's failure to give notice to movant of the effect of the Guidelines**

In Ground Two movant asserts that his counsel rendered ineffective assistance when on December 21, 2005, he failed to object to Court's failure to give movant notice of the effect of the Guidelines, as required under Rule 11(b)(1) of the Federal Rules of Criminal Procedure. In his motion, movant faults his attorney for failing to object when the Court concluded the change of plea hearing without explaining "the potentially deleterious effects of the Guidelines." Memorandum in Support at 26.

Rule 11 of the Federal Rules of Criminal Procedure governs the procedure for the entry of a guilty plea. Before a district court accepts a plea of guilty, the court must address the defendant in open court and inform the defendant of, and determine that the defendant understands, among other things, the following:

> (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;
>
> (I) any mandatory minimum penalty;
>
> (M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)
>
> Fed. R. Crim. P. 11(b)(1)(H), (I) and (M).

In this case, movant entered into a plea agreement in which he essentially only admitted to the elements of the charges. The Plea Agreement explicitly states that the parties did not agree as to the application of the Sentencing Guidelines. Plea Agreement at 2. There was no joint sentencing recommendation, and as to sentencing, the parties only agreed that the 2004 version of the Guidelines Manual applied and that movant was entitled to a three-level reduction for acceptance of responsibility. It was clear from the Plea Agreement that the parties had not reached an agreement as to the length of sentence, and that the Court would make its sentencing determination after making additional findings of fact and considering factors in the Guidelines and under §3553.

At the change of plea hearing, it is undisputed that movant was made aware of the maximum possible penalty, including imprisonment, fine, and term of supervised release and the mandatory minimum penalty. "There is 'substantial compliance' with Rule 11 when a prosecuting attorney informs the defendant of the possible sentence he faces, and the court extensively questions the defendant to make sure the plea is knowing, intelligent, and voluntary." United States v. Lambros, 544 F.2d 962, 966 (8th Cir. 1976). See also United States v. Gray, 581 F.3d 749, 753 (8th Cir. 2009). As for the information regarding the Court's obligation to calculate the applicable "sentencing-guideline range and to consider possible departure sentencing factors," the Guidelines were not specifically addressed at the hearing. Fed. R. Crim. P. 11(b)(1)(M). But it was not constitutionally defective assistance of counsel not to object at the hearing, because movant was fully aware that the parties had not agreed as to the application of the Guidelines to his case, and that the Court would made the sentencing determination based on the Guidelines and other factors that were yet to be determined, such as the quantity of the drugs. This was made plain in the Plea Agreement and was apparent from the discussion at the hearing.

From his motion, it would seem movant believes that at the change of plea hearing the Court should have specially addressed any applicable departures or enhancements that would have applied, and that the Court should have informed him of the exact sentence he would receive under the Guidelines. As the Eighth Circuit has stated, a district court fulfills its obligations under Rule 11(b) when it informs the defendant of the maximum term of imprisonment on each of the counts with which the defendant is charged, and any mandatory minimum sentence on any count. United States v. Burney, 75 F.3d 442, 445 (8th Cir. 1996). "Rule 11 does not require the sentencing court to inform the defendant of the applicable guideline range or the actual sentence he will receive." Id. See also Thomas v. United States, 27 F.3d 321, 324 (8th Cir. 1994) (holding a defendant had no right to be specifically informed of the effect of a "career offender" provision on his sentencing range). The change of plea hearing was not the occasion for the Court to inform movant as to what specific enhancements or downward departures it would apply because the government had not filed any relevant notices or motions and there was no other basis, such as a PSR,[3] for determining what factors would apply under the Guidelines and what movant's sentence was likely to be. For one thing, the parties had not even agreed as to the amount of the drugs involved. Therefore, even if there was a technical violation of Rule 11(b)(1)(M), any such violation was harmless. Under the terms of the Plea Agreement and from the tenure of the change of plea hearing, movant knew the parties had not reached an agreement as to the length of sentence, and that generally, when imposing a sentence, the

---

[3]Under Federal Rule of Criminal Procedure 32(e), "[u]nless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty. Fed. R. Crim. P. 32(e).

Court would "calculate the applicable sentencing-guideline range and [ ] consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)." Fed. R. Crim. P. 11(b)(1)(m). It was not deficient performance for his counsel not to make an objection when counsel knew his client was aware, in general terms, how the Court would make a sentencing determination.

Movant also cannot show prejudice. Movant's counsel's failure to object at the hearing could not have been prejudicial, because movant was informed of the mandatory minimum term of imprisonment – 10 years – and the possible maximum term of imprisonment – life – and he pleaded guilty knowing the range. If movant was willing to plea guilty facing a term of life, the longest possible sentence, he cannot establish that he would not have pleaded guilty and would have insisted on going to trial had his counsel objected and the Court had explained, in general terms, that the Court would calculate the Guidelines range but that it might depart or vary from that range and impose a sentence less than life. Burney, 75 F.3d at 445. As stated above, at the time of the change of plea hearing, the Court was not obligated to inform movant of what his exact punishment would be – especially in light of the fact that the Guidelines are advisory, the parties had not agreed upon a recommended sentence, and there were disputes of fact as to the enhancements. The Court finds Ground Two is without merit because movant cannot establish that his counsel performance was deficient in failing to object to the Rule 11 colloquy or that he was prejudiced thereby because he knew the range of punishment he was facing and how, in general terms, the Court would make a sentencing determination. Strickland, 466 U.S. at 687.

> **3.** **Claim that counsel rendered ineffective assistance for failing to object to the Court's treatment of the Guidelines as being "presumptively reasonable"**

In Ground Three movant argues that his counsel was ineffective when he failed to object to the Court's treatment of the Guidelines calculations as being presumptively reasonable. This claim without merit because it is based on the false assertion that the Court applied a presumption of reasonableness to the Guidelines. The Court did not. Furthermore, the claim is without merit because it is premised on the notion that his attorney should have raised an objection at the sentencing hearing based on a Supreme Court case that had not yet been decided.

In support of his argument that the Court treated the Guidelines as presumptively reasonable, movant points to one statement the Court made during the May 30, 2006 sentencing hearing, without providing the context in which the comment was made. At the sentencing hearing the following exchange took place between the Court and movant's counsel:

> MR. FORSYTH: I think that reality brings us back to the proposition that the Sentencing Guidelines are not mandatory, that they are advisory.
>
> THE COURT: Tell that to the prosecutor and the Eighth Circuit.
>
> MR. FORSYTH: Judge, I think that a sentence –
>
> THE COURT: I sit up here, and I'm always telling them they never seem to recommend anything outside the Guidelines, but -- and the Eighth Circuit says that they are presumptively reasonable, so that seems to be mandatory that you got to start there in terms of being presumptively reasonable, that's a mandate. But otherwise they say they are advisory. And I guess that's what the U.S. Attorney's Office is doing too, they are saying we're just giving you a little advice, sentence them within the Guidelines.
>
> Hearing Transcript at 9.

In this exchange, the Court was making the point that the Eighth Circuit viewed the Guidelines as presumptively reasonable, and that the U.S. Attorney's Office viewed the Guidelines as presumptively reasonable, if not mandatory, because, in the Court's experience, no one from that office had ever recommended a sentence below the Guidelines. Reviewing the entire hearing, it is

clear that the Court did not view the recommended Guidelines sentence of life as being presumptively reasonable in this case. The Court admonished the prosecution for always recommending the Guidelines sentence and treating the Guidelines as if they were mandatory. Id. at 18 and 24. Later during the hearing, the Court stated that a life sentence in this case was extreme and too harsh. Hearing Transcript at 10, 22 and 27. Reading the transcript as a whole, it is apparent that the Court treated the Guidelines as advisory when it sentenced movant. The sentence itself also supports this fact. Movant had the highest Total Offense Level under the Guidelines, 43, and a Criminal History Category of III. Under the 2004 Guidelines Manual, this combination would have resulted in a sentence of life. The Court, however, only imposed a sentence of 324 months.

The Eighth Circuit Court of Appeals also recognized this Court's appropriate treatment of the Guidelines as being advisory when it affirmed movant's sentence in an unpublished opinion dated January 29, 2008. In the opinion, the Eighth Circuit wrote "the district court did not violate Hayes' constitutional rights in applying the enhancements because the court treated Guidelines as advisory." United States v. Hayes, 266 Fed. Appx 502, 504 (Jan. 29, 2008).

But even if there was reason to believe the Court treated the Guidelines as presumptively reasonable, movant's claim of ineffective assistance of counsel must fail because he faults his counsel for failing to raise an objection based on a Supreme Court case that had not yet been decided. Movant claims his counsel was ineffective for not objecting under Rita v. United States, 551 U.S. 338 (2007). The Rita case, however, was not even decided until more than a year after movant was sentenced. At the time of the sentencing hearing, the Eighth Circuit's opinion in United States v. Claiborne had not yet been overturned, which held the guidelines, though advisory, are "presumptively reasonable." 439 F.3d 479, 481 (8th Cir. 2006). Even if the Court had treated the

Guidelines as presumptively reasonable, which it did not, it was not ineffective assistance for movant's counsel not to object when the Court would have been following binding Eighth Circuit precedent. An attorney is not ineffective for failing to object based on a case that had not yet been decided. <u>Anderson v. United States</u>, 393 F. 3d 749 (8th Cir. 2005). Movant's claim in Ground Three is without merit and will be dismissed.

**4. Claim that counsel was ineffective for failing to call Kristy Toczylowski to testify at the sentencing hearing**

In Ground Four, movant faults his counsel for failing to call Kristy Toczylowski to testify at the sentencing hearing held on March 6, 2006. Movant claims Ms. Toczylowski, who is the mother of movant's children, had exculpatory evidence that would have exonerated him with regard to the government's claim that he endangered the life of a minor. In support of his claim, movant has attached an affidavit signed by Ms. Toczylowski's dated August 8, 2008.

"The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." <u>United States v. Staples</u>, 410 F.3d 484, 488 (8th Cir. 2005) (internal marks and cited cases omitted). <u>See</u> <u>also</u> <u>Bowman v. Gammon</u>, 85 F.3d 1339, 1345 (8th Cir. 1996) (noting that under <u>Strickland</u>, "decisions related to trial strategy are virtually unchallengeable"). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have probably changed the outcome of the [proceeding].'" <u>Hadley v. Groose</u>, 97 F.3d 1131, 1135 (8th Cir. 1996) (quoting <u>Stewart v. Nix</u>, 31 F.3d 741, 744 (8th Cir. 1994)).

As an initial matter, the Court finds movant has not established Ms. Toczylowski was available and willing to testify on his behalf at the time of the sentencing hearing. First, there is evidence to suggest Ms. Toczylowski was not available to testify. According to the PSR prepared on January 20, 2006, and revised on February 11, 2006, Ms. Toczylowski's whereabouts were

"unknown." PSR at 11. Second, there is evidence in the record to suggest that in the months preceding the sentencing hearing, movant and Ms. Toczylowski were estranged and she would not have been willing to testify on his behalf. The government attached to its response a number of letters movant authored at the time. In a letter postmarked January 25, 2006, which is addressed to movant's co-defendant Jason Jackson, movant writes that "Kristy hasn't come to see me since the since the week before Thanksgiving. And she hasn't wrote since Halloween." Government Ex. 14 at 1. In a subsequent letter to Jason Jackson postmarked January 31, 2008, movant wrote, "have you heard what Kristy is doing know. Not really a surprise. I don't know what I was thinking when I thought she might actually at least be here for me. ... She makes me sick just thinking about her." Government's Ex. 8 at 1-2. Finally in a letter postmarked January 25, 2006, which is addressed to movant's co-defendant Jacob Reich, movant wrote, "as far as Kristy goes you can have that dope whore and all the problems that go with her cause im [sic] through i [sic] don't fuck with needle junkies." Government's Ex. 16 at 1. These letters, written at the time, contradict Ms. Toczylowski's affidavit and do not support movant's contention that Ms. Toczylowski was ready and willing to testify on his behalf at the sentencing hearing.

Based on the record before it, the Court concludes that movant's counsel was not constitutionally ineffective for failing to call Ms. Toczylowski as a witness at the sentencing hearing. Staples, 410 F.3d at 488 (8th Cir. 2005) Bowman, 85 F.3d at 1345. Movant has not established that Ms. Toczylowsk was available to testify at the hearing. And even if she had been available, Ms. Toczylowski might not have been a suitable witness for the defense, as there is evidence from the time of the proceedings to show that Ms. Toczylowski and movant were not on speaking terms, and that Ms. Toczylowski may have been taking drugs.

But even if the Court were to find that counsel's failure to call Ms. Toczylowski as a witness was constitutionally deficient performance, movant cannot establish that the outcome of the sentencing hearing would have been different had she testified. Hadley, 97 F.3d at 1135. In her affidavit, Ms. Toczylowski states that

> [W]hen [movant] was arrested along with Josh Spitz (Spitz) on August 6, 2004 at 200 Jefferson Street, Crystal City, Missouri ("200 Jefferson"), that our children were not present at 200 Jefferson on the day these two were arrested. At the times of the August 6, 2004 arrest, [movant], myself and our children were residing full time with my mother, Linda Toczylowski, at 1952 St. John's Crossing, Arnold, Missouri 63010. [Movant] and I had rented 200 Jefferson on or about July 20, 2004, but we had not moved into this rental home by August 6, 2004. Our family had spent the weeks between July 20, 2004 and August 6, 2004, painting and cleaning and moving non-essential property into 200 Jefferson. Neither myself, nor [movant], nor any of our children had spent a single night at 200 Jefferson prior to August 6, 2004. Therefore, I am personally certain that any allegations that our children were in any way placed in harm's way due to the events that occurred at 200 Jefferson on August 6, 2004 would be entirely fabricated and false.

Toczylowski Affidavit at 1-2.

Ms. Toczylowski's affidavit, written years after the hearing and the time of the events, is intended to contradict the testimony of Joshua Spitz. At the sentencing hearing on March 7, 2006, Mr. Spitz testified under oath that on August 6, 2004, he and movant were in movant's garage and were in possession of multiple tanks of anhydrous ammonia, which they had stolen. According to Mr. Spitz, they intended to use the anhydrous ammonia to manufacture methamphetamine, but the valves on one of the tanks containing the stolen anhydrous ammonia failed, causing anhydrous ammonia to leak from the tank. Mr. Spitz testified that he immediately began to attempt to prevent the anhydrous ammonia from leaking any further, but as he did so, he suffered burns to his arms and face. Mr. Spitz also testified that when the anhydrous ammonia began leaking into the garage, movant ran into the house and told Kristy Toczylowski to get the children and leave. The Court found this

testimony to be credible and it used this testimony, in part, to find movant had created a substantial risk of harm to the life of a minor. Even if the defense had offered contradictory evidence from Ms. Toczylowski, there was sufficient evidence in the record for the Court to conclude that the children were present at the house on August 6, 2004.

That said, the Court's imposition of the six-level enhancement for creating a substantial risk of harm to the life of a child was not based solely on the August 6, 2004 incident. Dr. Martyny testified, to a reasonable degree of scientific certainty, there was "no question" that the manufacture of methamphetamine using the anhydrous ammonia method would create a substantial risk of harm to the life of a minor child who was present at the location of the manufacturing. See Sentencing Memorandum at 19. Dr. Martyny also opined, to a reasonable degree of scientific certainty, that because the chemicals produced during the manufacture of methamphetamine remain in the environment for an extended period of time, the manufacture of methamphetamine in an environment in which a child was living would create a substantial risk of harm to the life of that child, whether or not that child was physically present at the time the manufacturing occurred. Id. Even if the children were not present at the residence on August, 6, 2004, there was still ample evidence that movant had endangered the life of a minor, and the Court would have imposed the six-level enhancement in any event. Movant admitted that he manufactured methamphetamine in his residence, including on one occasion three days before Jersie Hayes's death, which would have introduced hazardous chemicals into the home where the children resided. The government also introduced evidence that movant at times "smoked" or manufactured methamphetamine in the residence with his children present. Finally, the government presented results from scientific tests conducted on a pillowcase taken from the residence, which revealed a trace amount of

methamphetamine. Based on record before it, the Court concluded, under the relevant case law, that the evidence supported the imposition of the six-level enhancement, and the case law supports the enhancement even if the children were not present at the residence on August 6, 2004. <u>See</u> <u>United States v. Blanchard</u>, 162 F. App'x 655 (8th Cir. 2006) (enhancement for substantial risk of harm imposed where defendant manufactured methamphetamine in an apartment where she lived with her two children); <u>United States v. Johnson</u>, 134 F. App'x 990, 991 (8th Cir. 2005) (six-level enhancement imposed where defendants manufactured methamphetamine while their two-month old baby was in the house); <u>United States v. Walsh</u>, 299 F.3d 729, 734 (8th Cir.2002) ("[t]he potential hazards of methamphetamine manufacture are well documented."); <u>United States v. Graham</u>, 323 F.3d 603, 610 (8th Cir. 2003) (given defendant had manufactured methamphetamine for years and the potential hazards of methamphetamine was well-documented, it was "entirely reasonable to infer that, given his familiarity with the process of manufacturing methamphetamine, [defendant] 'was aware of a serious risk of death or serious bodily harm' associated with the operation of a methamphetamine lab.").

For all the above-stated reasons, the Court finds the claim raised in Ground Four to be without merit. Movant cannot show deficient performance on behalf of his attorney for failing to call Ms. Toczylowski to testify because there is evidence that she was unavailable at the time and more likely than not was unwilling to testify on movant's behalf. But in any event, movant cannot establish prejudice because even if Ms. Toczylowski had testified there was ample evidence in the record to support the imposition of the six-level enhancement for creating a substantial risk of harm to life of a minor.

**5. Claim of ineffective assistance of counsel for failing to move to withdraw the guilty plea**

In Ground Five movant contends that his attorney rendered ineffective assistance of counsel by failing to move for withdrawal of his guilty plea. This claim is also without merit. First, movant has not even established that he asked his counsel to move to withdraw the plea. Second, he cannot show that any such motion would have been granted.

No where in his motion, traverse, or attached affidavit does movant state that he asked or instructed his attorney to file a motion to withdraw his guilty plea. There is evidence that he told his attorney after the publication of the PSR that he was unhappy with the sentence he was facing. But movant does not claim that he asked his attorney to move to withdraw the guilty` plea. Movant faults his counsel for failing to move to withdraw the plea, because, according to movant, he should have intuited under the circumstances that the plea was not knowing and voluntarily made. The Court does not agree. The Court cannot find deficient performance where movant did not ask his counsel to move to withdraw the plea, as there was no basis for the motion and nothing to indicate that any such motion would have been granted. It is also noteworthy that movant never asked the Court himself that he be allowed to change his plea. Movant came before the Court on numerous occasions and was given the opportunity to speak, yet he never requested that he be allowed to withdraw his guilty plea.

Furthermore, movant cannot establish prejudice, because he cannot show that a motion to withdraw his plea would have been granted. Under Federal Rule of Criminal Procedure 11, a defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if the defendant can show "fair and just reason" for requesting the withdrawal. Fed. R. Crim P. 11(d)(2)(B). "The plea of guilty, however, is a solemn act not to be disregarded because of belated misgivings about [its] wisdom." United States v. Woosley, 440 F.2d 1280, 1281 (8th Cir. 1971). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which

he acknowledged committing the crime, 'the occasion for setting aside a guilty plea should seldom arise.'" United States v. Morrison, 967 F.2d 264 (8th Cir. 1992) (quoting United States v. Rawlins, 440 F.2d 1043, 1046 (8th Cir. 1971).

Movant's claim that his plea was not knowing and voluntarily made is based on the contention that he was unaware of the effect the enhancements would have on his sentence until after he had reviewed the PSR. The application of the Guidelines has provided the basis for a number of arguments that a defendant should be allowed to withdraw his or her plea. However, a defendant's misunderstanding of the application of the Guidelines to his or her sentencing does not constitute a "fair and just reason" for withdrawing a guilty plea where "the defendant was told the range of potential punishment and that the Guidelines would be applied to determine his [or her] sentence." Burney, 75 F.3d at 445. See also United States v. Hoelscher, 914 F.2d 1527, 1544 (8th Cir. 1990). Such a misunderstanding fails to meet the defendant's burden "even where it is based on an erroneous estimation by defense counsel." Bond, 135 F.3d at 1249. See also Burney, 75 F.3d at 445; United States v. Ludwig, 972 F.2d at 950–51 (erroneous calculation of guideline range by both defense and government counsel does not establish "fair and just reason" to withdraw plea, nor would defendant's misunderstanding of the applicable guidelines range, where defendant was apprised of the possible range of punishment and told that the guidelines would apply, citing Hoelscher, 914 F.2d at 1544). "Post-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea, or for this court to reverse the district court." United States v. Teeter, 561 F.3d 768, 770-71 (8th Cir. 2009) (citing Stuttley, 103 F.3d at 686). At the time of his plea, Movant was specifically informed that he was facing life imprisonment and a mandatory minimum of ten years and he was willing to enter a plea

of guilty. His alleged misunderstanding about his ultimate sentence does not constitute a fair and just reason to withdraw his plea. See Burney, 75 F.3d at 444–45.

In sum, the claim movant asserts in Ground Five is without merit. Movant has not shown his counsel's performance was deficient for not moving to withdraw the plea when movant did not even ask him to do so. Movant also cannot show that he suffered prejudice because a motion to withdraw the plea would not have been granted.

### B.  Ineffective Assistance of Appellate Counsel

In Ground Six, movant contends his appellate counsel was ineffective for failing to appeal the Court's so-called deficient Rule 11 colloquy, and in Ground Seven, movant claims his appellate counsel was ineffective for failing to appeal the Court's treatment of the Guidelines as being "presumptively reasonable." Both of these Grounds are without merit because, as discussed above, the underlying bases for the claims are without merit and they would have failed on appeal. Any technical violation of Rule 11 was harmless error, and the Court treated the Guidelines as advisory and did not apply a presumptively reasonable standard to them. As the Eighth Circuit has held, if there is no merit to a claim, failure to raise it on appeal does not result in ineffective assistance of counsel under Strickland. Garrett v. United States, 78 F.3d 1296, 1305 (8th Cir. 1996). Grounds Six and Seven are dismissed without merit.

### C.  Prosecutorial Misconduct

In Ground Eight, movant contends the government committed prosecutorial misconduct because it failed to disclose to the defense exculpatory evidence provided by Ms. Tocylowski. In support of this claim, movant has attached the affidavit of Ms. Toczylowski, in which she states,

> I was subpoenaed to Hayes' arraignment hearing in this case, as the government also tried to show that Hayes was somehow responsible for our infant daughter Jersie

Hayes. I am certain that [movant] was not in any way responsible for Jersie's death, and I was willing to testify to this fact at the arraignment. After being questioned by the government about this outside of the courtroom, the government agents told me that they did not need me to testify and that I could leave the courtroom.

Toczylowski Affidavit at 2.

Movant is asserting a Brady violation in Ground Eight. Brady v. Maryland, and its progeny make clear that the government must provide a defendant with exculpatory evidence. The failure of the prosecution "to provide evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). The duty to disclose encompasses impeachment evidence as well as exculpatory evidence, and evidence affecting the credibility of an essential witness. Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing to United States v. Bagley, 473 U.S. 667, 676 (1985)). See also Giglio v. United States, 405 U.S. 150, 154 (1972). Furthermore, the duty to disclose is applicable even though a defendant has not made a request. Strickler, 527 U.S. at 280 (citing to United States v. Agurs, 427 U.S. 97, 107 (1976)).

"To establish a Brady violation, the accused must show that the evidence at issue was favorable to him or her, either because it is exculpatory, or because it is impeaching; that the evidence must have been suppressed by the prosecution, either willfully or inadvertently; and that the evidence was material." Dye v. Stender, 208 F.3d 662, 665 (8th Cir. 2000). Evidence is material, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley 473 U.S. at 682.

Movant's claim fails because he has not established Ms. Toczylowski did indeed provide the government with favorable or exculpatory evidence, and he cannot show that the evidence was material. Upon close examination of the affidavit, the Court notes Ms. Toczylowski does not attest

to what information she provided the government. She states that she was questioned by government agents about the death of their daughter, but she does not specifically state what information she told the agents. Ms. Toczylowski does make the following statement in her affidavit: "I am certain that Hayes was not in any way responsible for Jersie's death, and I was willing to testify to this fact at the arraignment." <u>See</u> Toczylowski Affidavit at 2. But she does not state in the affidavit that she shared this opinion with the government agents. Ms. Toczylowski may have shared this opinion, but she may have been unresponsive to their questioning, or even given them other information. It is not clear from affidavit. Based on the evidence movant has presented, the Court does not find Ms. Toczylowski gave government agents favorable or exculpatory evidence that should have been disclosed under <u>Brady</u>.

But in any event, Ms. Toczylowski's opinion about the cause of death of the infant was not material. It is clear from the record that movant and his counsel were aware of Ms. Toczylowski and whatever information she might have had. Therefore, movant cannot show that he was in any harmed by the government's supposed failure to disclose Ms. Toczylowski's conversation with government agents on the day of his arraignment. Furthermore, Ms. Toczylowski's opinion about Jersie Hayes's cause of death would not have changed the outcome the sentencing. Ms. Toczylowski has no scientific or medical background that would have qualified her to offer an opinion as to the cause of the infant's death, and she could not have countered Dr. Martyny's expert testimony. What is more, the Court did not find that movant caused Jersie Hayes's death, but rather it found movant had created a substantial risk of harm to the lives of his children, including Jersie Hayes, as a result of his drug manufacturing activities. The claim in Ground Eight of prosecutorial misconduct is without merit and will be dismissed.

### D. Claims That Could Have Been Raised on Appeal

In Grounds Nine and Ten movant raises claims that are procedurally barred. Movant could have raised on appeal the claims he makes in Ground Nine, that his sentence was improperly imposed under a presumption of a reasonableness standard, and in Ground Ten, that his rights to due process were violated at sentencing because the Court's Rule 11 colloquy was improper. If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. <u>See</u> <u>United States v. Frady</u>, 456 U.S.152, 168 (1982); <u>Matthews v. United States</u>, 114 F.3d 112, 113 (8th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1064 (1998). If a movant is unable to show "cause" and "actual prejudice," he must make a "substantial claim that constitutional error has caused the conviction of an innocent person . . . ." <u>Schlup v. Delo</u>, 513 U .S. 298, 321 (1995). A claim of actual innocence must be based on "new evidence," and must convince the Court that "it is more likely than not that no reasonable juror would have found [movant] guilty beyond a reasonable doubt." <u>Schlup</u>, 513 U.S. at 327. <u>See also</u> <u>Embrey v. Hershberger</u>, 131 F.3d 739, 741 (8th Cir. 1997) (applying <u>Schlup</u> actual innocence standard in the context of a § 2255 motion), <u>cert. denied</u>, 525 U.S. 828 (1998).

"Cause" under the cause and prejudice test "must be something external to the [movant], something that cannot fairly be attributed to him," for example, a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance with the procedural rule impracticable. <u>Stanley v. Lockhart</u>, 941 F.2d 707 (8th Cir. 1991) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991)); <u>see also</u> <u>Greer v. Minnesota</u>, 493 F.3d 952, 957-58 (8th Cir. 2007). In his traverse, movant argues that the procedural bar should be lifted due to ineffective assistance of appellate counsel. Ineffective assistance of counsel in failing to raise an claim on appeal can amount to "cause." <u>Becht v. United Staes</u>, 403 F.3d 541, 545 (8th Cir. 2005). The deficient

performance, however, must have been so ineffective as to violate the Federal Constitution.  Murray v. Carrier, 477 U.S. 478, 488-89 (1986).

As discussed above, movant's claims relating to the Rule 11 colloquy and the Court's supposed treatment of the Guidelines as being presumptively reasonable are without merit.  Both of these claim would have been dismissed on appeal.  If there is no merit to a claim, failure to raise it on appeal does not result in ineffective assistance under Strickland.  Garrett, 78 F.3d at 1305. Grounds Nine and Ten are procedurally barred and without merit and will be dismissed.

### IV.  Conclusion

In his motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence, movant has failed to raise a meritorious and cognizable claim.  In Grounds One through Five, movant has not shown his trial counsel's performance was constitutionally defective or that he suffered prejudice. Grounds Six and Seven are without merit because movant's appellate counsel cannot be faulted for failing to raise non-meritorious claims on appeal.  Ground Eight is without merit because movant has not established a Brady violation.  Finally, Grounds Nine and Ten are procedurally barred because they could have been raised on appeal, and moreover, they are without merit.

Accordingly,

**IT IS HEREBY ORDERED** that movant James Glenn Hayes's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody is **DENIED.**

**IT IS FURTHER ORDERED** that movant James Glenn Hayes has not made a substantial showing of the denial of a constitutional right such that reasonable jurists would find the Court's assessment of the constitutional claims debatable, or that reasonable jurists would find it debatable whether the Court was correct in its procedural rulings, and therefore this Court will not issue a

certificate of appealability on those claims.  See Miller-El v. Cockrell, 537 U.S. 332, 338 (2003);

Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

An appropriate judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this __6th__ day of March, 2012.